**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JUDY N.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 25 CV 12364<br><br>Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Judy N. appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion to reverse and remand the Commissioner's decision [19] is denied, the Commissioner's motion for summary judgment [22] is granted, and the denial of benefits is affirmed.[1]

## Background

In June 2021, plaintiff applied for a period of disability and disability insurance benefits, alleging an onset date of February 11, 2012. [14-1] 15. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge (ALJ). [*Id.*] 15–25. The Appeals Council denied review in October 2025, *see* [*id.*] 1–6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff has appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. [14-1] 17. At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative disc disease (lumbar spine); depressive/adjustment disorder; and asthma/sinusitis. [*Id.*] 17. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 18–19. Before turning to step four, the ALJ ruled that plaintiff had the residual

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [14-1], [14-2], which refer to the page numbers in the bottom right corner of each page.
[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [10].

functional capacity (RFC) to: (1) to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about 6 out of 8 hours; (4) sit for a total of about 6 out of 8 hours; (5) occasionally climb ramps and stairs, and she could occasionally stoop, balance, and crouch, but she could never kneel, crawl, or climb ladders, ropes, or scaffolds; (6) perform fine and gross manipulation frequently but not constantly and was incapable of forceful grasping or torquing; (7) understand, remember, and carry out simple instructions; (8) use judgment to make simple work-related decisions; (9) tolerate occasional interactions with supervisors and coworkers; and (10) could deal with occasional changes in a routine work setting in terms of workplace, work processes, and work products; but also (11) was limited to working in nonhazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and she should avoid concentrated exposure to unguarded hazardous machinery (12) could not tolerate interactions with the general public; (13) could not perform work requiring a specific production rate such as assembly line work but could tolerate end of day quotas. [*Id.*] 19–23. At step four, the ALJ held that plaintiff could not perform her past relevant work as a administrative assistant. [*Id.*] 23–24. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: marker (131,100 jobs), sorter (12,000 jobs), and label coder (11,000 jobs). [*Id.*] 25. Accordingly, the ALJ concluded that plaintiff was not disabled. [*Id.*].

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (citation modified).

## Discussion

Plaintiff's brief contains two sections devoted to arguments for why the denial of benefits should be reversed. First, plaintiff claims that the ALJ's RFC assessment failed to fully account for Negron's manipulative limitations due to carpal tunnel. [19] 6-9. And second, the ALJ's rejection of plaintiff's subjective symptom allegation regarding her carpal tunnel was illogical. *See* [19] 9–11. While these are technically two arguments, they are both premised on the fact that the ALJ "relied entirely on [plaintiff's] physical condition *after* her [right carpal tunnel release] surgery to inform his RFC assessment[.]" [19] 8, 10 (emphasis in original). The Court rejects plaintiff's arguments.

As discussed above, the ALJ determined that plaintiff had the RFC to "perform fine and gross manipulation frequently but not constantly and was incapable of forceful grasping or torquing." [14-1] 19. While the ALJ did not find plaintiff's carpal tunnel to be a severe impairment, he did note that the "assessed residual functional capacity accounts for carpal tunnel-related symptoms by limiting the claimant to a range of no greater than light exertional work with no constant fine or gross manipulation, and no forceful grasping or torquing." [*Id.*] 21 n.3. The ALJ's analysis of plaintiff's carpal tunnel symptoms–which concluded that her statements about intensity, persistence, and limiting effects of her symptoms were not consistent with the record evidence–is found in a few different sections of the opinion. *Henderson v. Kijakazi*, No. 22 C 3890, 2023 WL 6388143, at *3 (N.D. Ill. Sept. 29, 2023) (explaining that the Court reads the ALJ's opinion as a whole). The ALJ explained: (1) that plaintiff testified that she had problems holding items due to carpal tunnel syndrome around 2014, [*Id.*] 20, 44; (2) underwent right carpal tunnel release surgery in July of 2015, which resulted in symptom improvement, [*Id.*] 22; and (3) that several medical records after July of 2015 document "no indication of any reduced range of motion . . . normal strength, reflexes, and sensory functioning (i.e., no numbness) . . . no musculoskeletal problems . . . [and] no complaints of any ongoing knee or hand/wrist problems[.]" [*Id.*] 21–22; *see also* [*id.*] 23 ("There is no indication of any longitudinal/durational need for an assistive device and no indication of any weakness or gripping/grasping difficulty after her June/July 2015 right carpal tunnel release.").

Plaintiff argues[3] that "[n]othing in the ALJ's summary or conclusory assertion explained how or why he believed Negron could use her hands – even if not forcefully – for up to six hours each day for the entire period at issue." [19] 8. The Court disagrees. As summarized above, the ALJ made several references to medical records that showed no reduced range of motion, sensory function, strength or reflexes after her surgery. The Court can easily understand how those findings led to the ALJ's conclusion that plaintiff could use her hands for up to six hours each day.

Plaintiff also contends that the ALJ erred by not considering her fine and gross manipulative limitations from the period before her surgery. [*Id.*] 8–9. As discussed above, plaintiff alleged an onset date of February 2012, and the surgery did not take place until July of 2015. Thus, plaintiff argues that she could have still been entitled to benefits, even if only for a closed period of disability, if she were found disabled for any consecutive 12-month period during that time period.[4] [*Id.*]. The problem with

[3] Plaintiff also argues this analysis was insufficient because the ALJ "merely summarized [plaintiff's] testimony; noted the improvement in [plaintiff's] symptoms in the immediate aftermath of her carpal tunnel release; and, in a footnote, asserted without further elaboration that his RFC assessment 'accounts for carpal tunnel-related symptoms[.]'" [19] 8 (internal quotation marks omitted). But summarizing a plaintiff's testimony and explaining why the ALJ finds it inconsistent with the record evidence is sufficient analysis under the minimal articulation standard.

[4] The Court also notes that plaintiff's date last insured was December 31, 2026.

plaintiff's argument is that she identifies scant evidence of any pre-surgery functional limitations due to her carpal tunnel symptoms other than her own testimony–which the ALJ determined was inconsistent with the record.

First, plaintiff cites a medical record in support of her claim that she has suffered from carpal tunnel syndrome "since at least 2010." [19] 7. But the only relevant information in the record cited says "chronic pain of both hands, numbness at night for at least 4 years" [14-2] 789. As this record does not indicate any functional limitations, the ALJ's failure to include it in his analysis does not constitute reversible error. Next, plaintiff cites a medical record from June of 2015, [19] 7, that states:

> [Plaintiff] is seen today in **consultation** at the request of Dr. Morso because of numbness involving her right hand. Her left hand also is symptomatic, but to a much lesser degree than the right hand. [B]egan having symptoms last year. She underwent electrical studies last June 2014. Her symptoms were not severe enough to warrant intervention at that time. Unfortunately, over the last year her symptoms have become quite a bit more severe. She finds that she is unable to sleep at night without wearing a splint on her hand. When she arises in the morning, the hand is throbbing and weak. She finds little relief from anti[-]inflammatory medication. During the day, activities as diverse as washing dishes, vacuuming, or trying to work on the computer may precipitate symptoms. She finds that she is unable to hold on to objects securely.
>
> . . .
>
> She underwent electrodiagnostic studies at Gottlieb Hospital on June 30, 2014. These studies were consistent with grade 2 right median neuropathy at the carpal tunnel, that is carpal tunnel syndrome.
>
> . . .
>
> **IMPRESSION**: She has symptoms, physical signs, and electrical confirmation of carpal tunnel syndrome.

[14-2] 778 (emphasis in original). While this record does imply some functional limitations, the Court does not find that the ALJ's failure to mention it renders his analysis unsupported by substantial evidence.[5]

First, that record does not actually state that plaintiff is unable to perform fine and gross manipulation on a frequent basis. It says that certain daily activities (which

---

[5] Plaintiff also cites to a February 2016 treatment note that recorded "left hand CTS worsening." [19] 7; [14-2] 764. But again, this does not indicate any functional limitations that the ALJ would have needed to address to meet the minimal articulation standard.

likely involve fine and gross manipulation) "may precipitate symptoms." Second, this record was from June 2015–the month prior to plaintiff' right carpal tunnel release surgery. And, as plaintiff admits, the ALJ discussed plaintiff's symptom improvement after that surgery. Further, the record stated that her symptoms a year before that note, in June of 2014, were not as severe as noted in June 2015 and did not warrant intervention.

In summary, the Court understands plaintiff's argument to be that the ALJ committed reversible error because one treatment note states that between June 2014 and June 2015 plaintiff's carpal tunnel symptoms developed to a point that could be seen as inconsistent with the ALJ's RFC and, despite the identified symptoms improving after her surgery in July of 2015, the ALJ should have explained why she did not meet the criteria to be disabled "for any consecutive 12 month period" after her alleged onset date but before her surgery.

In making his findings, the ALJ is only subject to the most minimal of articulation requirements and a Court will not overturn his decision as long as he has provided a logical bridge from the evidence to his conclusion. *Warnell*, 97 F.4th at 1053–54 (7th Cir. 2024). Further, "an ALJ need not mention every snippet of evidence in the record," as long as he does "not ignore entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). The administrative record in this case spanned nearly 13,000 pages. [14]. Plaintiff's citation to a few pages that, read in a certain light, could be seen as documenting temporary functional limitations inconsistent with the ALJ's RFC (and consistent with her hearing testimony) is not evidence of the ALJ ignoring entire lines of evidence. Accordingly, the ALJ has met his burden. While the ALJ could have cited that note and either explained that he did not find the symptoms recorded inconsistent with his RFC or that, even if they were, there is insufficient evidence that they persisted for a consistent 12-month period, that was not necessary to satisfy minimal articulation standard.

This analysis applies with even more force to plaintiff's argument that the ALJ improperly concluded that her testimony regarding subjective carpal tunnel symptoms was inconsistent with the record evidence. *Hohman v. Kijakazi*, 72 F.4th 248, 251 (7th Cir. 2023) ("And we review credibility determinations with even more deference—we reverse only those determinations that are 'patently wrong.'") (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). As explained above, the few pages of pre-surgical records cited by plaintiff are insufficient to demonstrate that the ALJ ignored a contrary line of evidence in his decision, and thus the Court cannot find that his determination was "patently wrong."

For these reasons, the Court rejects both of plaintiff's grounds for remand.

## Conclusion

Plaintiff's motion to reverse and remand [19] is denied, the Commissioner's motion for summary judgment [22] is granted, and the denial of benefits is affirmed.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: October 29, 2026**